Dexter Johnson
Name

DOC ID Number: 244661

P.O. Box 97
Address

McAlester, Oklahoma 74502

ORIGINAL **FILED**

OCT 1 4 2016

PATRICK KEANEY
Clerk, U.S District Court
By_____
Deputy Clerk

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

Dexter Leemon Johnson , Plaintiff(s)
(Full Name)

v.

John Marlar , Defendant(s)

Patricia Sorrels

Case No. **CIV** 16 - 440 JHP
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT**
PURSUANT TO 42 U.S.C. §1983

### A.   PARTIES

1) Dexter L. Johnson , is a citizen of Louisiana
   (Plaintiff)                                    (State)

who presently resides at P.O. Box 97, McAlester, Oklahoma
                         (mailing address or place of confinement)

74502

2)   Defendant John Marlar is a citizen of
             (Name of first defendant)

McAlester, Oklahoma , and is employed
(City, State)

as PRISON Doctor at Oklahoma State Penitentiary .
   (Position and title, if any)

At the time the claim(s) alleged in this complaint arose, was this defendant acting under the color
of state law?   Yes ☑ No ☐
If your answer is "Yes", briefly explain:
Defendant Marlar is a doctor for/in the Oklahoma
Department of Corrections. As such, he is required to provide
inmates with adequate medical treatment for serious medical needs.

complain.cr (5/30/97)                 Page -1-

3)   Defendant Patricia Sorrels _____ is a citizen of
(Name of second defendant)

McAlester, Oklahoma _____, and is employed
(City, State)

as Correctional Health Services Administrator for/at
(Position and title, if any) Oklahoma State Penitentiary.

At the time the claim(s) alleged in this complaint arose, was this defendant acting under the
color of state law? Yes ☒ No ☐. Defendant Sorrels is an employee
If your answer is "Yes", briefly explain: of the Oklahoma DOC. She is the chief
medical officer at OSP. As such she is responsible for ensuring that
OSP um medical services provides inmates with adequate medical treatment
for serious medical needs, esp. when said medical needs are sewing directly to her.
*[You may attach one additional page (8½" x 11") to furnish the above information for additional
defendants.]*

**B.   JURISDICTION**

1)   Jurisdiction is asserted pursuant to: (Check one)
☒   42 U.S.C. §1983 (applies to state prisoners)

☐   *Bivens v Six Unknown Named Agents of Fed. Bureau of Narcotics.*
403 U.S. 388 (1971) and 28 U.S.C. §1331 (applies to fed. prisoners)

2)   Jurisdiction also in invoked pursuant to 28 U.S.C. §1343(a)(3).   (If you wish to assert
jurisdiction under different or additional statutes, you may list them below.)

_____

_____

**C.   NATURE OF CASE**

1)   Briefly state the background of your case. Plaintiff has been trying to get
defendants to cure or get cured
plaintiff's severe hemorrhoidal problems since Oct. 2012. Defendants
circumvented and/or disregarded resolution of said hemorrhoidal problems
for so long that Plaintiff literally almost died from as the
result of said hemorrhoidal problems reaching the pinnacle of
aggravation between Dec. 15, 2015 and Jan. 16, 2016.

**D.   CAUSE OF ACTION**

1)   I allege that the following of my constitutional rights, privileges or immunities have been
violated and that the following facts form the basis for my allegations: *[If necessary, you
may attach up to two additional pages (8½" x 11") to explain any allegation or to list
additional supporting facts.]*
a   (1)   Count I: Plaintiff is suing Defendant John
Marlar and Defendant Patricia Sorrels, in their
*(See additional pages num to PART D.)*

(2)   Supporting Facts: (Include all facts you consider important, including names of persons involved, places and dates. Describe exactly how each defendant is involved. State the facts clearly in your own words without citing legal authority or argument.)

*SEE additional pages for Supporting and Additional FACTS.*

b   (1)   Count II:

_____

_____

_____

(2)   Supporting Facts: (Include all facts you consider important, including names of persons involved, places and dates. Describe exactly how each defendant is involved. State the facts clearly in your own words without citing legal authority or argument.)

_____

_____

C   (1)   Count III:

_____

_____

_____

(2)   Supporting Facts: (Include all facts you consider important, including names of persons involved, places and dates. Describe exactly how each defendant is involved. State the facts clearly in your own words without citing legal authority or argument.)

_____

_____

## E.   PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1)   Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to the conditions of your imprisonment? Yes ☑ No ☐
If your answer is "Yes", describe each lawsuit. *[If there is more than one lawsuit, describe this each additional lawsuit using the same format on a blank sheet of paper which you should label "E. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF."]*

a) Parties to previous lawsuit:

Plaintiffs: Dexter Leemon Johnson

Defendants: Sgt. Cooley and C/O Brittany Jones

b) Name and Location of Court and docket number U.S. Dist. Ct. for Eastern Dist. of Oklahoma, Muskogee, Oklahoma. No. CIV-14-308-RAW-SPS.

c) Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?) Dismissed as frivolous on March 24, 2015. Did not appeal.

d) Issues raised Defendants violated plaintiff's 8th Amend. right by inflicting punishment that was totally without penological justification.

e) Approximate date of filing lawsuit Don't KNOW.

f) Approximate date of disposition March 24, 2015

2) I have previously sought informal or formal relief from the appropriate administrative officials regarding the acts complained of in Part D.   Yes ☑ No ☐.
If your answer is "Yes," briefly describe how relief was sought and the results.  If your answer is "No," briefly explain why administrative relief was not sought.

I have filed multiple Request To Staffs and grievances to the Warden, Defendant Sorrels and medical Administrator over ↑ all of ODAC requesting to have my hemorrhoids surgically removed. See, e.g., Grievance # 2015-22, # 2015-20, # and RTS # 2015-1306, #15-2311. Also See EXHIBITS "A" and "B" (attached hereto)

3) I have exhausted available administrative remedies  Yes ☑ No ☐.
See EXHIBITS "A" & "B" (attached hereto as proof of exhaustion)
If your answer is "Yes" briefly explain the steps taken.  Attach proof of exhaustion.
If your answer is "No" briefly explain why administrative remedies were not exhausted. I filed a Request to Staffs to Defendant Sorrels on 6-24-15 and 11-11-2015 asking to be sent to outside facility for surgical removal of hemorrhoids (RTS # 2015-1306 & 15-2311), filed grievances requesting surgery... on 12-6-2015, 5-25-2015, & 5-10-2015 (Grievance # 2015-22; 2015-20; no answer to the grievance filed on 12-6-2016.

F.   **PREVIOUSLY DISMISSED ACTIONS OR APPEALS**
↓ 2015

1) If you are proceeding under 28 U.S.C. §1915, please list each civil action or appeal you have brought in a court of the United States, while you were incarcerated or detained in any facility, that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted.  Please describe each civil action or appeal. [If there is more that one civil action or appeal, describe the additional civil actions or appeals using this same format on a blank sheet of paper which you should label "F. PREVIOUSLY DISMISSED ACTIONS OR APPEALS."] In July 2014 I filed a civil suit under 42 USC §1983 against 2 C/Os for violating my 8th Amend. rights by inflicting punishment that was "totally without penological justification." Said suit was filed in U.S. Dist. Ct. Eastern Dist. of OKLA., Case No. CIV-14-308-RAW-SPS. Dismissed as frivolous on 3-24-2016 (march 24, 2015). NO APPEAL was filed or took by me.

complain.cr (5/30/97)                                                    Page 4

a) Parties to previous lawsuit:
Plaintiffs: Dexter Leemon Johnson
Defendants: Sgt. Cooley and C/O Brittany Jones

b) Name and Location of Court and docket number U.S. Dist. Ct. East. Dist. Of OKLAHOMA; Muskogee, OK. Case No. CIV-14-308-RAW-SPS.

c) Grounds for dismissal: [✓] frivolous   [ ] malicious   [ ] failure to state a claim upon which relief may be granted.

d) Approximate date of filing lawsuit DON'T KNOW

e) Approximate date of disposition March 24, 2015

2) Are you in imminent danger of serious physical injury? ☑ Yes No ☐. If your answer is "Yes" please describe the facts in detail below without citing legal authority or argument. My blood count dropped to the "NEAR-FATAL" level of 3 between Dec. 15, 2015 and Jan. 16, 2016. A Hematologist has not ascertained ALL the CAUSES of my blood count dropping to 3; hence all causes have not

G.  **REQUEST FOR RELIEF** been treated and thus can cause my blood count to drop to 3 or lower at any time.

1) I believe that I am entitled to the following relief: See Page 5A (next Page) for completion of PART/SECTION G.

_____        *Dexter L. Johnson*
Original Signature of Attorney (if any)   Original Signature of Petitioner

_____

_____

Attorney's full address and
telephone number


## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares (or certifies, verifies, or states) under penalty of perjury that he is the plaintiff in the above action, that he has read the above complaint and that the information contained therein is true and correct. 28 U.S.C. §1746. 18 U.S.C. §1621.

Executed at Okla. State Penitentiary _____ on September 9, 2016.
              (Location)                          (Date)

*Dexter L. Johnson*
(Original Signature of Prisoner)

— ORIGINAL —

# G. REQUEST FOR RELIEF

1. In the individual capacity(s) of both Defendants plaintiff request(s): $10,000.00 in nominal damages from each Defendant; $490,000.00 from each Defendant for mental and emotional suffering and distress; $1,000,000.00 in punitive damages from each Defendant; and $1,500,000.00 from each Defendant for physical suffering — for it taking over 3 years just for Defendants to arrange for plaintiff to get proper treatment for his severe hemorrhoidal problems and for the excruciating physical torture that plaintiff suffered as the result of his serious medical needs or problems (hemorrhoidal bleeding and swelling) reaching the pinnacle of aggravation when plaintiff's blood count dropped to the very NEAR-FATAL level of 3 between December 15, 2015 and January 16, 2016.

In the official capacity(s) of each Defendant plaintiff request(s): An injunction ordering Defendants to prescribe and provide plaintiff with Ferrous Sulfate 325mg capsules (iron pills), Prenatal vitamins, and Docusate Sod 100mg capsules (stool/toilet softener pills) for the remainder of plaintiff's incarceration in the custody of ODOC; and most importantly and most NECESSARY, an injunction ordering Defendants TO IMMEDIATELY GET PLAINTIFF EXAMINED BY A QUALIFIED OR CERTIFIED HEMATOLOGIST — as instructed by Dr. Yolette Louis; an injunction ordering Defendants to in a timely manner get plaintiff sent to an outside medical facility for surgical removal of his hemorrhoids (if said procedure has not been done by the time this complaint is filed); an injunction ordering Defendants to ensure that them or their colleagues do not demonstrate any form of harassment or retaliation against plaintiff for filing this complaint.

5A.

— ORIGINAL —

( PART D. CAUSE OF ACTION continued...)

(1) a. individual and official capacity, for demonstrating blatant, egregious "deliberate indifference to plaintiff's serious medical needs (hemophilic hemorrhoidal/anal bleeding)," in violation of the 8th Amendment of U.S. Constitution.

(2) Supporting Facts: On October 20, 2012, plaintiff completed (i.e., filled out, signed and dated) and turned in an ODOC REQUEST FOR HEALTH SERVICES form informing medical personnel that he be experiencing anal bleeding. Within the next seven days plaintiff was seen by Dr. Randy Whitekiller and by Defendant Dr. John Marlar (hereafter referred to as Defendant Marlar). Dr. Whitekiller and defendant Marlar both diagnosed plaintiff's anal bleeding and anal swelling as hemorrhoids. Plaintiff explained to Dr. Whitekiller and defendant Marlar that plaintiff experiences anal bleeding about 97% of the times plaintiff has bowel movements; and explained that anal swelling occurs after every bowel movement; and explained that said anal swelling be so painful at times that plaintiff can't sit flat on his buttock(s)... following bowel movements (after bowel move- ments plaintiff lays on his side(s) in an endeavor to alleviate the pain and avoids standing up after bowel

(i)

— ORIGINAL —

(PART D. CAUSE OF ACTION continued...)

movements in efforts to avoid recurrence of the anal bleeding he suffers during bowel movements).

As treatment for the hemorrhoids, defendant Marlar prescribed plaintiff a series of suppositories and hemorrhoidal ointments. Plaintiff applied said suppositories and ointments for several months to no avail (the suppositories and ointments DID NOT stop nor minimize plaintiff's hemophilic anal bleeding or the painful anal swelling). In other words, the treatment plaintiff received from defendant Marlar (for plaintiff's severe hemorrhoidal problems) for nearly a year proved to be ineffective and futile.

Incited by intense desire and need to get rid of ongoing irritating physical agony stemming from anal swelling and incited by soulful fear of actually bleeding to death from long-standing hemophilic hemorrhoidal bleeding, on November 6, 2013, plaintiff completed and turned in an ODOC REQUEST FOR HEALTH SERVICES form wherein or whereby he formally stated that he wanted to be scheduled to have his hemorrhoids permanently removed by surgery. In response to plaintiff's formal request to have his hemorrhoids surgically removed, on the day before Thanksgiving Day 2013 defendant Marlar had plaintiff transported to the OSP infirmary for the stated purpose of defendant Marlar (himself) performing surgical removal of plaintiff's hemorrhoids (defendant Marlar actually told plaintiff that he [defendant Marlar] was going to do the

(ii)

— ORIGINAL —

(PART D. CAUSE OF ACTION continued...)

surgery (Himself). In fact, shortly after plaintiff arrived at the infirmary defendant Marlar had plaintiff sign a CONSENT form giving defendant Marlar permission to do the surgery. When it was time for the surgery to actually get done, all defendant Marlar did was do an external examination of plaintiff's anus and told plaintiff that surgery could not be done (or was not necessary) because there were no hemorrhoids to remove. (Defendant Marlar's claim of there being no hemorrhoids to remove did not make any sense or lacked logical basis. Because defendant Marlar had previously diagnosed plaintiff's anal bleeding and swelling as hemorrhoids and had previously informed plaintiff that surgery was the only way to permanently get rid of hemorrhoids.) Truth be told, defendant Marlar is not qualified nor authorized to perform surgical removal of hemorrhoids on inmates. Accordingly, defendant Marlar had no intention of surgically removing plaintiff's hemorrhoids. So it stands to reason that plaintiff being took to the infirmary for the purpose of surgery (on the day before Thanksgiving Day 2013) was nothing but an absurd pretense arranged and played out by defendant Marlar (to deceive and/or deter plaintiff from pursuing an adequate or permanent cure for plaintiff's severe hemorrhoidal problems).

(iii)

—ORIGINAL—

(PART D. CAUSE OF ACTION continued...)

Throughout the year of 2014 plaintiff made several more verbal requests and at least one formal written request (on 8-19-2014) seeking a permanent cure for his severe and constantly worsening hemorrhoidal problems. But for the whole year of 2014 neither defendant Marlar nor defendant Patricia Sorrels (hereafter referred to as defendant Sorrels) made any effort to even arrange to have plaintiff sent to an outside medical facility for surgical removal of plaintiff's hemorrhoids. (Defendant Marlar told plaintiff that ODOC didn't have enough money to send plaintiff to an outside medical facility for surgery.)

By the time the year 2015 had arrived, plaintiff's hemophilic anal bleeding and agonizing anal swelling showed no sign of mitigation. So plaintiff began utilizing the grievance process in an endeavor to get a permanent or adequate cure to/for his severe hemorrhoidal problems.

On March 31, 2015, plaintiff sent a Request To Staff (document used to initiate ODOC's grievance process) to defendant Sorrels asking to arrange for plaintiff to be sent to an outside medical facility to have plaintiff's hemorrhoids surgically removed. Defendant Sorrels did not provide plaintiff a written response to said 3-31-2015 Request To Staff.

After bleeding from the anus for hours on May 10, 2015, plaintiff sent an EMERGENCY GRIEVANCE (inmates can skip the normal grievance steps when substantial

(iiii)

— ORIGINAL —

( PART D. CAUSE OF ACTION continued...)

risk of personal injury or other irreparable harm exists) to Warden Anita Trammell (the warden at that time) on May 10, 2015 (Grievance #2015-20, code 7). In said emergency grievance plaintiff gave warden Trammell a detailed description of the hemophilic anal bleeding episode that took place on May 10, 2015 and plaintiff explained how his constantly recurring hemophilic anal bleeding be affecting his daily activities and living circumstances in a way that could cause conflict with other inmates. Plaintiff also asked warden Trammell to consult defendant Sorrels and in a timely manner thereafter arrange for plaintiff to be sent to an outside medical facility to have plaintiff's hemorrhoids surgically removed. Warden Trammell forwarded plaintiff's emergency grievance to defendant Sorrels on May 11, 2015 for resolution. On May 12, 2015, defendant Sorrels returned said emergency grievance to plaintiff without answering it on the merits (defendant Sorrels determined that plaintiff's grievance was not of an emergency nature and hence ordered plaintiff to use the normal grievance process).

On May 25, 2015, plaintiff re-submitted his emergency grievance from May 10, 2015 (Grievance #2015-20, code 7) to defendant Sorrels using the normal grievance process. (The grievance number of said re-submitted grievance is ~~xxxxxx~~: 2015-22.) In her response to said re-submitted grievance defendant Sorrels stated that "she reviewed and discussed

( ~~(iii)~~ ) (v)

—ORIGINAL—

(PART D. CAUSE OF ACTION continued...)

plaintiff's medical record with defendant Marlar and scheduled an appointment in the next few days for an assessment of plaintiff's condition, and if warranted, defendant Marlar may send plaintiff for more testing/procedures." See EXHIBIT A: GRIEVANCE RESPONSE FROM DEFENDANT SORRELS, Dated 5-30-2015.

   Around the date of June 9, 2015, defendant Marlar spoke of plaintiff being sent to an outside medical facility for testing/procedures. In an attempt to get confirmation or affirmation of arrangements to be sent to an outside medical facility for treatment, plaintiff sent defendant Sorrels a Request To Staff on June 24, 2015 asking whether or not plaintiff was going to be sent to an outside medical facility for treatment. See EXHIBIT "B": RTS#2015-1306. On 6-30-2015 Pam Weddle (secretary) answered RTS#2015-1306 on behalf of defendant Sorrels; Pam stated that plaintiff would be scheduled as soon as she (Pam Weddle) hear from The OU Medical Center. See EXHIBIT "B"

   Two more months (July and Aug. 2015) passed by without plaintiff being informed by either defendant of any arrangements to be sent to an outside medical facility for treatment. So on September 15, 2015, plaintiff sent defendant Sorrels another Request To Staff asking if plaintiff was going to be sent to an outside medical facility for treatment. Defendant Sorrels did not provide plaintiff with a written or verbal response, despite the

(VI)

—ORIGINAL—

(PART D. CAUSE OF ACTION continued...)

fact plaintiff waited at least 2 months for a response.

On November 11, 2015, plaintiff sent defendant Sorrels another Request To Staff asking defendant Sorrels to explain to plaintiff within 10 working days (ODOC policy requires staff members to respond in writing to Request To staffs within 10 working days, see, e.g., OP-090124. IV. B. item 4) why he has not been sent to an outside medical facility for treatment OR send him to an outside medical facility for treatment. Defendant Sorrels responded in writing on November 23, 2015 (RTS # 15-2311, code 7). In her response defendant Sorrels stated: "A referral was sent by Dr. Marlar but not approved by Dr. McCurdy he must review all referrals."

After defendant Sorrels unjustly denied plaintiff's request for adequate treatment of his perennial severe hemorrhoidal problems, plaintiff sent a grievance (along with defendant Sorrels's response to RTS # 15-2311, code 7) to medical Services Administrator (chief medical official in ODOC) Buddy Honaker on December 6, 2015, asking him to arrange for plaintiff to be sent to an outside medical facility for surgical removal of his (plaintiff) hemorrhoids.

Before receiving Buddy Honaker's response to the grievance dated December 6, 2015, plaintiff began getting extremely sick around the date of December 15, 2015. Plaintiff was vomiting several times per day; was experiencing weakness, dizziness,

(VII)

─ORIGINAL─

(PART D. CAUSE OF ACTION continued...)

nausea, diarrhea, and loss of appetite. Plaintiff verbally reported said symptoms or ailments to a nurse no later than December 17, 2015. In response, defendant Marlar had a nurse to bring plaintiff some diotame tablets and some 500Mg antibiotics named Amoxicillin. The diotame tablets cured the diarrhea and the antibiotics temporarily mitigated the other symptoms. But over a week and a half after taking said pills plaintiff was still experiencing weakness, dizziness, nausea, and loss of and fluctuating appetite. By December 27, 2015, plaintiff noticed that his lips and the corners of his mouth had started turning white, which alarmed plaintiff a great deal.

So on December 28, 2015, plaintiff completed and turned in an ODOC Request For Health Services form informing OSP-Medical Services of ~~said~~ his ongoing and worsening weakness, dizziness, nausea, and loss of and fluctuating appetite; plaintiff also informed OSP-Medical that the 500Mg antibiotics were not working. A day or two later OSP medical returned said 12-28-2015 Request For Health Services form to plaintiff with the written statement: " You are scheduled." Seven days passed without plaintiff being seen or diagnosed by the OSP doctor (defendant Marlar). Hence, on January 6, 2016, plaintiff addressed an Emergency Grievance to defendant Sorrels explaining how plaintiff had been

(VIII)

—ORIGINAL—

(PART D. CAUSE OF ACTION continued...)

experiencing dizziness, weakness, nausea, and loss of appetite for over 3 weeks and expressed to defendant Sorrels that: "the grievance was an emergency because the fact the symptoms had been lingering over 3 weeks was indicative of said symptoms having the potential to become FATAL"; as relief plaintiff asked defendant Sorrels to have plaintiff seen by the OSP doctor (defendant Marlar) for a diagnosis and treatment of symptoms AS SOON AS POSSIBLE; plaintiff sent said emergency grievance to defendant Sorrels on January 10, 2016 (Grievance #2016-01).

By January 10, 2016, plaintiff's condition had got so bad that, the whiteness around plaintiff's mouth was obviously visible or noticeable to his cellmate (a lay person). Out of fear of dying, plaintiff wrote his aunt Betty Smith (of Shreveport, LA.) and asked her to call OSP to talk to the Warden and/or defendant Sorrels about plaintiff being seen by the OSP doctor immediately (phone records will confirm this call being made). And on January 10, 2016 plaintiff completed and turned in ANOTHER ODOC Request For Health Services form AGAIN telling OSP-Medical that he had been experiencing weakness, dizziness, nausea, and loss of appetite for over 3 weeks and AGAIN asked to be seen and examined by a doctor. AGAIN; all plaintiff got in response was the Request For Health Services form with the written comment: "You are scheduled" (said January 10, 2016 Request For Health

(IX)

— ORIGINAL —

( PART D. CAUSE OF ACTION continued...)

services form was returned to plaintiff on January 12, 2016). But plaintiff still did not get seen and checked by the OSP doctor (defendant Marlar) by or on January 12, 2016.

Defendant Sorrels returned Grievance # 2016-01 (Emergency Grievance that plaintiff sent her on 1-10-2016) to plaintiff on January 13, 2016, without answering it on the merits (she did not answer because plaintiff did not submit a Request To Staff first — which is not required when inmates file Emergency Grievances). By January 13, 2016, plaintiff still ~~had~~ had not been seen and examined by the OSP doctor (defendant Marlar) about the dizziness, weakness, nausea, and loss of appetite that plaintiff was suffering for over 3 weeks — despite the fact that plaintiff previously communicated to defendant Marlar and defendant Sorrels his belief that said lingering symptoms (of dizziness, weakness, nausea and loss of appetite) could become fatal.

Finally, on January 15, 2016, defendant Marlar seen and examined plaintiff regarding plaintiff's ongoing suffering from dizziness, weakness, nausea and loss of appetite. Defendant Marlar took plaintiff's vitals and had a nurse name(d) Meredith to take some blood from plaintiff for testing. The next day — Saturday, January 16, 2016 — plaintiff was took to the ER at the McAlester Regional Health Center (in McAlester, Oklahoma) in accordance with the orders of the acting Warden (Jerry Chrisman) and Defendant Sorrels.

( X )

—ORIGINAL—

(PART D. CAUSE OF ACTION continued...)

Shortly after being formally admitted to the ER, medical staff informed plaintiff that he was there because his blood count dropped to the very near-fatal level of 3. ER nurses and doctors made the following comments to plaintiff to help him realize and understand how serious and urgent and how close to death his condition was: A resident name(d) Dr. Richard told plaintiff — a black person with coffee brown skin — that plaintiff was paler than a white person, then Dr. Richard used his I-Phone to take a picture of the inside of plaintiff's eyelids to show plaintiff that plaintiff's red blood cells were white; Dr. Megan E. Radmer and Registered Nurses Tiffany and Brittany told plaintiff "they were surprised that plaintiff was even walking and talking with a blood count as low as 3," which indicated that people with a blood count of 3 usually lie in a coma.

In accordance with the orders of Dr. Yolette Louis (attending physician), plaintiff was assigned to the ICU, whereupon 3 to 4 pints of blood was injected into his destitute system for a period of 18 to 22 hours. (Medical Records from the McAlester Regional Health Center will confirm that plaintiff's blood count dropped to 3 and will confirm that plaintiff received 3 to 4 pints of blood for the purpose of keeping him ALIVE. McAlester Regional Health gave plaintiff the following Medical Record Number: M000 249577.)

(XI)

—ORIGINAL—

( PART D. CAUSE OF ACTION continued...)

Dr. Louis opined that the cause of plaintiff's blood count dropping to the very near-fatal level of 3 was hemorrhoidal bleeding and ~~from~~ anemia. But she was not certain, so Dr. Louis arranged for plaintiff to get a colonoscopy and a GI( procedure where a tube is stuck down the throat to examine the colon or intestine) and an examination by a Hematologist( blood specialist—which is the only type of doctor qualified to diagnose with certitude and prescribe proper treatment for blood disorders or defects), all at the McAlester Regional Health Center. Defendants did not want to foot the bill for McAlester Regional... to give plaintiff a colonoscopy and a GI and an examination by a hematologist. So defendants ordered plaintiff to be took directly back to OSP one day after his admission to McAlester Regional Health Center's ER and ICU. But plaintiff's condition was so serious and urgent and so close to death that, intially Dr. Louis refused to release plaintiff; during a phone conversation Dr. Louis emphatically stated to defendants:"" "I can't release him (plaintiff) unless he is being released DIRECTLY TO ANOTHER HOSPITAL'"(phone records will confirm this statement being made). Dr. Louis agreed to release plaintiff directly back to the prison only after defendants assured

(XII)

—ORIGINAL—

(PART D. CAUSE OF ACTION continued...)

her they would immediately (e.g., within the next 5 days) get plaintiff a colonoscopy and GI and examination by a hematologist as she (Dr. Louis) instructed.

On January 21, 2016, plaintiff received a colonoscopy and a GI. However, as of this date— Friday, September 9, 2016—plaintiff still has not been examined by a hematologist.

Defendants' ongoing failure to follow Dr. Louis's instruction(s) to have plaintiff examined by a hematologist causes plaintiff to remain in imminent danger of suffering a repeat of the serious physical injury of his blood count dropping to the near-fatal level of 3, or lower. Plaintiff's blood count dropping to the near-fatal level of 3 was caused by or constitutes a blood disorder or defect. A hematologist is the only type of doctor qualified to ascertain and prescribe proper treatment for blood disorders or defects, which is why Dr. Louis instructed defendants to have plaintiff examined by a hematologist. Accordingly, ALL the causes of plaintiff's blood count dropping to the near-fatal level of 3 have not and/or are not being treated due to said causes NOT being known or identified. Hence, it stands to reason that said un-treated causes have a reasonably high probability of causing plaintiff's blood count to drop to

(XII) (XIII)

—ORIGINAL—

(PART D. CAUSE OF ACTION continued...)

3 or lower AT ANY GIVEN TIME—like it unexpectedly or suddenly dropped to the near-fatal level of 3 between December 15, 2015 and January 16, 2016.

Plaintiff's initial serious medical needs or problems (hemorrhoidal bleeding and swelling) were reported to and diagnosed by OSP-Medical Services in October 2012. But the serious physical injury (blood count dropping to near-fatal level of 3) that plaintiff suffered as the result of defendants' deliberate indifference to said initial medical needs or problems occurred between December 15, 2015 and January 16, 2016. Thus, Oklahoma's 2-year statute of limitation for "an action for injury to the rights of another," under Okla. Stat. Ann. Title 12 §95(3), should start from January 16, 2016. And although plaintiff first reported his severe hemorrhoidal problems to OSP-Medical Services in October 2012, defendants did not take appropriate and necessary action to get plaintiff proper treatment until January 16, 2016 (by this time plaintiff's hemorrhoidal problems had been lingering for SO LONG that they contributed to and/or generated the development of another more serious physical injury: blood count dropping to near-fatal level of 3).

Plaintiff has been actively addressing and seeking an adequate or permanent cure for his severe hemorrhoidal problems for over 3 years—without resolution. The amount of facts that emerged in said 3-plus years have been myriad. So myriad that, plaintiff was unable to include and assert all important facts using no less than the extra pages used herein. Pro se plaintiff hopes the Court does not penalize him for citing ALL GERMANE supporting facts. (XIII) (XIV)

Grievance Response from Reviewing Authority

Offender Name:   Dexter Johnson                    DOC Number:      244661

Receipt Date:   5-28-15   Grievance Category Code:      7   Grievance Number:   2015-22

1.   Discrimination  3.  Complaint against staff    5. Disciplinary process  7. Medical  9. Records/sentence administration
2.   Classification   4.  Condition of confinement  6. Legal                 8. Property  10. Religion

**Response:**  I have reviewed your medical record and discussed it with Dr. Marlar. He will schedule you for an appointment in the next few days and assess your condition. If warranted he may send you for more testing/procedures.

Partial Relief Granted.

Patricia Sorrels - CHSA                              5/30/15
_____        _____
Reviewing Authority – Facility Health Services Admin (medical issues)   Date

_____        06-04-2015
Review Authority – Facility/District/Unit Head                          Date

I have received the copy of the response of the reviewing authority.

Dexter Johnson                                       6-9-2015
_____        _____
Signature of Grievant                                Date

_____        _____
Signature of Staff Witness and Printed Name of Witness    Date

You may appeal to the director or chief medical officer or designee at Department of Corrections, P.O. Box 11400, Oklahoma City, OK 73136-0400 within 15 <u>calendar days</u> of the receipt of response using only DOC Form 060125V entitled "Misconduct/Grievance Appeal Form to Administrative Review Authority." Do not send this response to the director or chief medical officer.

1.   Original to file
2.   Copy to offender

EXHIBIT "A": Page 1 of 3

ORIGINAL

DOC 090124B (R 1/13)

*IHCC*

## OFFENDER GRIEVANCE

date 5-28-15                     *ORIGINAL*                          5-29-15 date

code 2015-22                                                              1    code

no.    7                                                              2015-20 no.

### DO NOT WRITE OR STAMP ABOVE THIS LINE

Date May 22, 2015                          Facility or District   OSP

Name Dexter Johnson                        Facility Housing Unit  A-1-1
            (Print)

DOC Number 244 661

Have you previously submitted a grievance on this same issue? Yes  If yes, what date 5-10-15, facility
OSP , grievance # 2015.20 . You must submit this completed original within 15 calendar days of the
receipt of the response to the "Request to Staff". The "Request to Staff" must have been submitted within 7
calendar days of the incident.  Do not include/attach anything to this grievance except the "Request to Staff"
including the response. You may quote from or make reference to statutes, operations, field, or administrative
memoranda, department publications (time sheets, inventory forms, assessments, etc.). You will be permitted only
one opportunity to correct any error(s) made in submitting your grievance.

1.    The nature of your complaint.  This statement must be specific as to the complaint, dates, places,
      personnel involved, and how you were affected.  One issue or incident per grievance.  Use backside of
      this page only, if necessary. On 5-10-2015 my anus bled non-stop from
8:08 P.M. to 8:56 P.M. the bleeding happened on and off until about
2:00 A.M. this was the result of a severe seemingly incurable case
of hemorrhoids I suffer from.

2.    Informal action taken (including dates) to resolve the complaint, as well as the names of those employees
      from whom you sought an answer to your grievance. On 3-31-2015 I sent CHSA
Patricia Sorrels (YOU) a RTS asking her to arrange for me to
have my hemorrhoids "permanently removed." I explained to her
that I previously treed (tried) to have said treatment done
through OSP medical staff but to no avail. I wrote a RTS to (→ Back)
3.    The action you believe the reviewing authority may lawfully take.

arrange for me to go to an outside facility to have my
hemorrhoids surgically or permanently removed or cured.

Grievance report sent to (warden/district supervisor/correctional health services administrator):
Patricia Sorrels                              CHSA-OSP
Name                                          Title
Dexter Johnson    RECEIVED      May 25, 2015 (placed in mail on this date)
Signature of Grievant                         Date Sent to Reviewing Authority
                  MAY 26 2015

                                      OSP Medical
1. Original to file                                     DOC 090124A (R 11/14)
2. Copy to offender      BY:.......................
                                      MAY 28 2015
      EXHIBIT "A" Page 2 of 3          Received

(2. continued...)

medical on 5-11-2015 explaining in detail the 5-10-2015 episode of hemophilic hemorrhoidal bleeding and again requested to be treated for a "permanent cure." Medical answered my RTS (see attached RTS) but has not treated or arranged for me to have my hemorrhoidal problem permanently cured as today (5-22-2015). On 5-10-2015 I sent Warden Anita Trammell an emergency grievance ~~asking~~ (grievance # 2015.20) asking her to consult medical personnel and thereafter arrange for me to have my hemorrhoids surgically removed at an outside facility.

MEDICAL REQUEST (if available)

## Mu Be Submitted Through the La Library
## Offender Grievance Process
### REQUEST TO STAFF

TO: _Medical_ _____ FACILITY/DIST/UNIT: _OSP_ DATE: _5-11-15_
(NAME AND TITLE OF STAFF MEMBER)

I have _√_ have not_____ already submitted a "Request to Staff" or grievance on this same issue.
If yes, what date: _3-31-2015_ facility: _OSP_ grievance #: _Unanswered_
I affirm that I do _√_ do not__ have a grievance pending on this issue. _at this time_
I affirm that I do ___ do not _√_ have a lawsuit of any type pending that relates in any way to this issue.
If a lawsuit is pending, indicate case number and court: _____
This request _____ does _√_ does not relate to a pending misconduct report.  If it does, this request may only be answered by the investigator assigned to the misconduct.

**SUBJECT:**   State completely, but briefly, the problem on which you desire assistance. This statement must be specific as to the complaint, dates, places, personnel involved, and how you were affected. One issue or incident per "Request to Staff." Your failure to specifically state your problem may result in this being returned unanswered.

On 5-10-2015, while defecating I had what I think was a hemorrhoidal flair up. it began bleeding at 8:06 P.M. and bled NON-STOP til 8:53 P.M. During this period I flushed the toilet 11 times and after each flush the inside of the toilet filled with blood within a minute or less. At 10:34 P.M. the bleeding from my anus started AGAIN. This time I was just standing up and

(USE OTHER SIDE IF MORE SPACE IS NEEDED.  DO NOT ATTACH ADDITIONAL PAGES.) → Back →

**ACTION REQUESTED:** State exactly how you believe your request may be handled; that is, what exactly should be done and how.

Examine to see or determine whether my rectal/anal bleeding is hemorrhoids, cancer, or hemophilia. After you make a diagnosis; arrange for me to be treated for a "permanent cure" at an outside medical facility or institution. PLEASE GET ME (→ Back →)

NAME: _Dexter Johnson_ DOC NUMBER: _244661_ UNIT & CELL NUMBER: _A-1-1_
(PRINT)

SIGNATURE: _Dexter Johnson_ WORK ASSIGNMENT: _____

### DO NOT WRITE BELOW THIS LINE

DISPOSITION: _You are scheduled_

_____

STAFF MEMBER _____ DATE _____

Received

1. Original to file
2. Copy to offender

EXHIBIT "A"; Page 3 of 3
ORIGINAL

MAY 1 2 2015
DOC 090124D (R 11/14)
OSP-Medical

Must be Submitted Through the Law Library

EXHIBIT "B"

## Offender Grievance Process
### REQUEST TO STAFF

JUN 29 2015

2015-1306 cd-7

TO: Patricia Sorrels - CHSA          FACILITY/DIST/UNIT: OSP          DATE: 6-24-15
(NAME AND TITLE OF STAFF MEMBER)

I have ✓ have not_____ already submitted a "Request to Staff" or grievance on this same issue.
If yes, what date: 3-31-15 & 5-11-15 facility: OSP          grievance #: 2015-22
I affirm that I do ____ do not ✓ have a grievance pending on this issue.
I affirm that I do ____ do not ✓ have a lawsuit of any type pending that relates in any way to this issue.
If a lawsuit is pending, indicate case number and court: _____
This request _____does ✓ does not relate to a pending misconduct report. If it does, this
request may only be answered by the investigator assigned to the misconduct.

**SUBJECT:**  State completely, but briefly, the problem on which you desire assistance. This statement must be specific as to the complaint, dates, places, personnel involved, and how you were affected. One issue or incident per "Request to Staff." Your failure to specifically state your problem may result in this being returned unanswered.

#2015-22

On May 22, 2015 I filed a grievance to you requesting to be sent to an outside facility to have my hemorrhoids surgically or permanently removed or cured, grievance #2015. You stated that you reviewed my medical record and discussed it with Dr. Marlar. Dr. Marlar spoke of me going to Linsley for testing and procedure(s).

(USE OTHER SIDE IF MORE SPACE IS NEEDED. DO NOT ATTACH ADDITIONAL PAGES.)

**ACTION REQUESTED:** State exactly how you believe your request may be handled; that is, what exactly should be done and how.

Let me know whether or not I am going to Linsley for treatment.

Thank You.

NAME: Dexter Johnson      DOC NUMBER: 244661 UNIT & CELL NUMBER: A-1-1
        (PRINT)

SIGNATURE: Dexter Johnson          WORK ASSIGNMENT: _____

### DO NOT WRITE BELOW THIS LINE

DISPOSITION: You have been sent for a consult. As soon as I hear from Dr., you will be scheduled.

Riddle Sr II                          6/30/15
STAFF MEMBER          RECEIVED BY          DATE

1. Original to file          ORIGINAL          JUN 30 2015          DOC 090124D (R 11/14)
2. Copy to offender                          OSP MEDICAL
                                              SERVICES