# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DEXTER LEEMON JOHNSON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. CIV 16-440-JHP-SPS |
| | ) |
| **JOHN MARLAR,** | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

This action is before the Court on Defendant's motion for summary judgment. The Court has before it for consideration Plaintiff's complaint (Doc. 1), Defendant's motion (Doc. 42), a special report prepared by the Oklahoma Department of Corrections (DOC) at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (Doc. 41), and Plaintiff's response to Defendant's motion (Dkt. 44).

Plaintiff, an inmate in the custody of the DOC who is incarcerated at the Oklahoma State Penitentiary (OSP) in McAlester, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at that facility. Plaintiff has been housed at OSP since 2004. Special Report (Doc. 41), Attachement 1. The defendant is John Marlar, a physician at OSP.

### Standard of Review

The Court has carefully reviewed the record and construes Plaintiff's pleadings liberally. *Haines v. Kerner*, 404 U.S. 519 (1972). This relaxed standard, however, does not relieve his

burden of alleging sufficient facts on which a recognized legal claim could be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. However, a party opposing a motion for summary judgment may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## STATEMENT OF THE CASE

Plaintiff Dexter Johnson is currently in the custody of the Oklahoma Department of Corrections (ODOC) where he is serving a 150 year sentence for shooting with intent to kill. Johnson also has a pending murder conviction in the State of California. Special Report (Doc. 41), Attachment 1. Plaintiff commenced the instant action against Dr. Marlar on October 16, 2016. (Doc. 1). In his Complaint, Plaintiff alleges, that Dr. Marlar's failure to treat his bleeding hemorrhoids and anemia nearly cost him his life in early 2016. However, Plaintiff's deliberate indifference claim fails as Dr. Marlar's treatment of Plaintiff was at all times proper. This brief relies upon the Court-ordered Special Report filed contemporaneously in this action at (Doc. 41).

**STATEMENT OF FACTS**

Based upon the record the following facts are uncontroverted pursuant to Fed. R. Civ. P. 56.

**Exhaustion**

1. On May 11, 2015, Plaintiff submitted a request to staff asking that his hemorrhoids be examined. Doc. 1, page 24[1]. In response, Plaintiff was informed that he was "scheduled." *Id.* On May 22, 2015, Plaintiff then submitted a related grievance asking that he be sent to an outside facility to have his hemorrhoids treated. Doc. 1, page 22. On May 30, 2015, OSP's correctional health services administrator (CHSA) responded that Plaintiff's medical records had been reviewed and discussed with Dr. Marlar, and that an appointment would be scheduled to assess his condition. Doc. 1, page 21. Plaintiff was also informed that he would be sent for testing/procedures if warranted. *Id.*

2. On June 24, 2015, Plaintiff submitted a Request to Staff asking if he was going to Lindsey Medical Center for hemorrhoid treatment. Doc. 1, page 25. In response, Plaintiff was informed that he would be scheduled when OSP medical officials heard from OU. *Id.*

3. On July 19, 2015, Plaintiff submitted a Request to Staff to the Chief Medical Officer of the Department of Corrections, asking that his medical records be reviewed and that he be sent for hemorrhoid surgery at an outside medical facility. S.R., Attachment 3, pages 32-33[2]. On August 21, 2015, this RTS was returned unanswered because it was improperly submitted. *Id.* at page 34.

---

[1] When referring to page numbers of Plaintiff's Complaint, the court references those assigned by the electronic filing system.
[2] All references to page numbers in the Special Report are to the Bates numbering at the bottom of the Report.

4. On November 11, 2015, Plaintiff submitted a Request to Staff to OSP's CHSA asking for an explanation as to why he had not been sent to an outside medical facility for hemorrhoid surgery and asking to be scheduled for such services. S.R., Attachment 5, page 40. In response, Plaintiff was informed that a referral was submitted by Dr. Marlar but not approved by Dr. Joel McCurdy. *Id.* On December 6, 2015, Plaintiff then submitted a related grievance to Medical Services Administrator Buddy Honaker, asking that he be sent to an outside medical facility for hemorrhoid surgery. *Id.* at pages 41-42. On January 11, 2016, the grievance was returned unanswered because it was improperly submitted. *Id.* at page 43.

5. After commencement of the above-styled litigation, on November 28, 2016, Plaintiff submitted an "Emergency" Grievance asking that he be examined by a hematologist. S.R., Attachment 4, pages 36-37. On January 4, 2017, the grievance was returned unanswered because it was improperly submitted. *Id.*

## Medical Care

6. On October 20, 2012, Plaintiff submitted a Request for Health Services (RHS) indicating that he was suffering from anal bleeding. In response, Plaintiff was informed that he was scheduled for an appointment. S.R., Attachment 6, page 45.

7. On October 23, 2012, Plaintiff was diagnosed with hemorrhoids and issued a prescription for suppositories. *Id.* at 46.

8. On February 2, 2013, Plaintiff was seen for hemorrhoids. *Id.* at 48. He was prescribed ointments and fiber and encouraged to increase fluid intake. *Id.* at 49.

9. On November 6, 2013, Plaintiff submitted a RHS asking to have his hemorrhoids removed. In response, he was informed that he was scheduled to be seen and was treated for diarrhea on the same date. *Id.* at 50-51.

10. On November 12, 2013, Plaintiff submitted a RHS complaining of bowel and bladder issues. In response, he was scheduled for an appointment. *Id.* at 52-53.

11. On November 15, 2013, Plaintiff was seen by Dr. Marlar and given an injection of rocephin. *Id.* at 54.

12. On November 18, 2013, Plaintiff was seen by Dr. Marlar and indicated that his urinary tract infection had improved. *Id.* at 55.

13. On March 1, 2015, Plaintiff submitted a request to be examined for anemia. In response, he was advised that he had been scheduled to see a provider. *Id.* at 58.

14. On March 2, 2015, Plaintiff was scheduled for a blood test. *Id.* at 59.

15. On March 12, 2015, Plaintiff was examined and his blood was tested. He was also authorized to receive double portions of food for 30 days. *Id.* at 60-61.

16. On April 7, 2015, Plaintiff was seen for hemorrhoids. He was prescribed suppositories, ointment and fiber and was encouraged to increase fluid intake. *Id.* at 62-64.

17. On April 24, 2015, Plaintiff received a periodic physical examination. *Id.* at 66-67.

18. On April 27, 2015, Plaintiff's blood was drawn. *Id.* at 68-70.

19. On May 19, 2015, Plaintiff was treated for constipation. *Id.* at 71.

20. On June 8, 2015, Plaintiff was treated for hemorrhoids and bleeding. *Id.* at 72. Dr. Marlar also indicated that he planned to send Plaintiff for a consultation for hemorrhoid banding. *Id.*

21. On June 15, 2015, Plaintiff was prescribed double meal portions. *Id.* at 73.

22. On June 30, 2015 Plaintiff was prescribed medical snacks. *Id.* at 74.

23. On July 13, 2015 Plaintiff was assessed for double meal portions. *Id.* at 75.

24. On September 15, 2015 Plaintiff was prescribed double meal portions. *Id.* at 77.

25. On November 12, 2015, Plaintiff was assessed for double meal portions. *Id.* at 78.

26. On December 28, 2015, Plaintiff submitted a RHS complaining of dizziness and nausea. He was informed that he was scheduled for an appointment. *Id.* at 79-80.

27. On December 30, 2015, Plaintiff was treated for nausea and diarrhea. *Id.* at 81-82.

28. On December 31, 2015, Plaintiff was treated for an upper respiratory infection and prescribed amoxicillin. *Id.* at 83-84.

29. On January 10, 2016, Plaintiff submitted a RHS again complaining of dizziness and nausea. In response, an appointment was scheduled. *Id.* at pages 85-86. 96-130. It was determined that his hemorrhoids were "unlikely to be the source of his severe anemia/pancytopenia." *Id.* at 110.

30. On January 15, 2016, Plaintiff was seen for abdominal pain. *Id.* at 87-95. He received an x-ray that indicated constipation. Plaintiff also received lab work on that date. Plaintiff was prescribed dulcolax, suppositories, fiber and bismuth to treat diarrhea, constipation and abdominal pain. *Id.*

31. On January 16, 2016, Plaintiff was transported to the McAlester Regional Health Center (MRHC) because his blood tests indicated critically hemoglobin. He was diagnosed with acute anemia/low hemoglobin, pancytopenia and hemorrhoids. *Id.* at 111.

32. On January 17, 2016, Plaintiff was discharged from the MRHC back to the care of the prison. *Id.* at 112-114.

33. On January 19, 2016, Plaintiff was checked at his cell door and indicated that he felt better. *Id.* at 133.

34. On January 21, 2016, Plaintiff received an endoscopy/colonoscopy at Lindsay Municipal Hospital. *Id.* at 135-136. He was diagnosed with internal hemorrhoids and ordered to consume fiber. *Id.*

35. On January 25, 2016, Plaintiff submitted a RHS asking why his blood level dropped, requiring his hospitalization. He was therefore scheduled for an appointment. *Id.* at 138-138.

36. On January 26, 2016, Plaintiff received an ultrasound of his abdomen. *Id.* at 140.

37. On February 3, 2016, Plaintiff had blood drawn for lab work. *Id.* at 141-143.

38. On March 2, 2016, Plaintiff had blood drawn for lab work. *Id.* at 144-146.

39. On March 9, 2016, Plaintiff had blood drawn for lab work. *Id.* at 147-149.

40. On March 24, 2016, Plaintiff had blood drawn for lab work. *Id.* at 150-152.

41. On April 13, 2016, Plaintiff was examined and scheduled for hemorrhoid banding at the University of Oklahoma Medical Center, to occur on April 28, 2016. *Id.* at 153155.

42. On April 28, 2016, Plaintiff was seen at OU Medical Center. A colonoscopy and a follow-up were recommended. *Id.* at 156-158.

43. On May 17, 2016, Plaintiff was scheduled for a colonoscopy at OU Medical Center, to occur on June 9, 2016, with a follow-up scheduled for June 30, 2016. *Id.* at 160161. Plaintiff was instructed on how to prepare for the colonoscopy. *Id.* at 160.

44. On June 8, 2016, Plaintiff's colonoscopy was cancelled after Plaintiff ate a meal and failed to comply with the ordered liquid diet and colonoscopy prep. *Id.* at 162-163.

45. On June 10, 2016, Plaintiff's colonoscopy was rescheduled, to occur on June 14, 2016. *Id.* at 164.

46. On June 14, 2016, Plaintiff traveled to OU Medical Center for a colonoscopy but it was cancelled because he had again failed to follow instructions for preparation. *Id.* at 165-166.

47. On June 25, 2016, Plaintiff submitted a RHS regarding missing medical snacks. He was informed that the problem had been addressed with the kitchen. *Id.* at 167-168.

48. On June 30, 2016, Plaintiff was seen at OU Medical Center. He was prescribed Mirilax and a follow up appointment was scheduled for July 14, 2016. *Id.* at 169-171.

49. On July 14, 2016, Plaintiff was seen at OU Medical Center. He was prescribed Miralax and another follow up appointment was scheduled for July 28, 2016. *Id.* at 172-175.

50. On July 28, 2016, Plaintiff was seen at OU Medical Center. Blood work was completed and Plaintiff was scheduled for an examination under anesthesia (EUA) and possible hemorrhoidectomy, to occur on August 12, 2016. *Id.* at 176-181.

51. On August 12, 2016, Plaintiff was seen at OU Medical Center and evaluated in the GI clinic as a referral from general surgery. *Id.* at 183-186.

52. On August 23, 2016. Plaintiff was evaluated by OSP for continued receipt of double meal portions. *Id.* at 187.

53. On September 30, 2016, Plaintiff had his blood drawn for lab work. *Id.* at 192.

54. On November 9, 2016, Plaintiff was seen for rectal bleeding and was informed that OSP was awaiting a surgery appointment. *Id.* at 195-197. On the same date, OSP confirmed the surgery had been scheduled for December 1, 2016 at OU Medical Center. *Id.* at 197.

55. On October 14, 2016, Plaintiff commenced the instant action. Doc. 1.

56. On November 30, 2016, Plaintiff had blood drawn for lab work. *Id.* at 198-199.

57. On December 1, 2016, Plaintiff was seen at OU Medical Center where it was noted that he needed to be scheduled for a hemorrhoidectomy. *Id.* at 200-207.

58. On December 19, 2016, Plaintiff was evaluated for a medical diet at OSP. *Id.* at 210.

59. On January 13, 2017, in response to a request by OSP that Plaintiff's hemorrhoid surgery be scheduled, OSP was informed that "it takes a long time to schedule a surgery." *Id.* at 212.

60. On February 13, 2017, Plaintiff was scheduled for a hemorrhoidectomy, to occur on February 28, 2017 at OU Medical Center. *Id.* at 213.

61. On February 28, 2017, Plaintiff had a hemorrhoidectomy at OU Medical Center. *Id.* at 214-222.

# PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES REGARDING HIS REQUEST FOR TREATMENT BY A HEMATOLOGIST.

Pursuant to the PLRA, "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Thus, a prisoner cannot sue concerning prison conditions without first exhausting all available administrative remedies. *Booth v. Churner*, 532 U.S. 731, 733-34 (2001); 42 U.S.C. § 1997e(a). Exhaustion is required for all inmates seeking relief in federal district court regardless of the type of relief available under the institutional administrative procedure. *Woodford v. Ngo,* 548 U.S. 81 (2006); *Booth,* 532 U.S. at 741.

To properly exhaust, the prisoner must comply "with an agency's deadlines and other critical procedural rules... ." *Ngo*, 548 U.S. at 90. "Simply presenting a defective or noncomplying grievance...does not constitute exhaustion of remedies." *Brewer v. Mullin*, 130 F.App'x 264, 265 (10th Cir. 2005) (not selected for publication). Prisoners must exhaust remedies, even if doing so seems futile. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Moreover, a prisoner must timely exhaust each and every step of a prison system's grievance procedure in full compliance with the procedure's requirements; partial compliance is not sufficient. *Id.* Courts will only excuse failure to exhaust if prison officials impede the prisoner's attempts. *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). Finally, the prisoner must complete the grievance process or there is no exhaustion of administrative remedies. *Id.*

## ODOC'S Grievance Process

DOC Policy OP-090124, "Offender Grievance Process," governs ODOC offender complaints regarding incidences of prison life. *See* Special Report, Attachment 2. Further, it provides the multi-step exhaustion process an offender must satisfy before filing suit. *Id.*

According to OP-090124(IV), an offender must first attempt to informally resolve his complaint by talking with the appropriate staff member. *See* OP-090124(IV). If unsuccessful, then the offender must submit a Request to Staff ("RTS") to the appropriate staff member. *Id.* at (IV)(C). If the offender's complaint remains unresolved, the offender may begin the formal grievance procedure by submitting a Grievance to the Reviewing Authority. *Id.* at (V). If the complaint is medical related, the offender must submit the Grievance to the facility Correctional Health Services Administrator ("CHSA"). *Id.* at (V)(B)(1). Grievances that are an emergency or of a sensitive nature can be submitted directly to the Reviewing Authority without informal resolution. This is appropriate where the inmate faces a substantial risk of personal injury, sexual harm or other irreparable harm. *Id.* at (VIII). If a grievance response fails to resolve the issue, the inmate should appeal to the Administrative Review Authority ("ARA"), or if the complaint is medical related, to the Chief Medical Officer. *Id.* at (VII). Only after all of these steps are taken has the grievance process been exhausted.

**Hematologist Grievance**

Plaintiff Dexter Johnson's deliberate indifference claim and request for injunctive relief stems, in part, from Defendant's alleged failure to refer him to a hematologist. Doc. 1, pages 6-7 and 19. However, Plaintiff did not exhaust his available administrative remedies regarding his request to be treated by a hematologist. Plaintiff filed a number of administrative requests for hemorrhoid surgery. S.R., Attachments 3-5. However, only one of those requests demanded treatment by a hematologist, and it was submitted on November 28, 2016 - *after* commencement of this action. S.R., Attachment 4, pages 36-37. Moreover, the grievance was returned unanswered as it failed to comply with the grievance policy. *Id.,* page 38. This unexhausted, post-litigation grievance fails to satisfy the prelitigation exhaustion requirements set forth in the Prison Litigation

Reform Act. Therefore, this Court finds that Plaintiff has failed to exhaust administrative remedies regarding his request for treatment by a hematologist, and the related deliberate indifference claims and request for injunctive relief is denied.

### PLAINTIFF'S REQUEST FOR AN INJUNCTION REQUIRING HEMORRHOID SURGERY AND MEDICATION IS MOOT.

In his Complaint, Plaintiff requests that Defendant be ordered to provide hemorrhoid surgery and prescriptions for vitamins, iron pills and stool softeners. Doc. 1, pages 6-7. However, Plaintiff received hemorrhoid surgery on February 28, 2017. S.R., Attachment 6, pages 214-222. He has also consistently received prescriptions for iron pills, prenatal vitamins, stool softeners and suppositories. S.R, Attachment 7. Therefore, Plaintiff's requests for injunctive relief is denied as moot. *Jordan v. Sosa*, 654 F.3d 1012, 1027-28 (10th Cir. 2011) and *Rizzo v. Goode*, 423 U.S. 362, 372 (1976). (A claim is moot when no reasonable expectation exists that the alleged violation will recur and interim events have eliminated the effects of the alleged violation. *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1524 (10th Cir. 1992). Injunctive relief is improper when there is no continuing violation of federal law. *Green v. Mansour*, 474 U.S. 64, 73 (1985). *See also, City of Los Angeles v. Lyons*, 461 U.S. 95, 111-13 (1983).)

### PLAINTIFF'S CLAIM OF DELIBERATE INDIFFERENCE

Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)). *See also Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir.1998) ("Prison officials are required to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety."). To establish deliberate indifference

based on prison officials failing to attend to an inmate's serious medical needs, a § 1983 plaintiff must satisfy an objective and subjective component. *See Mata v. Saiz,* 427 F.3d 745, 751-752 (10th Cir. 2005).

First, under the objective component, the deprivation must be sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. *Farmer v. Brennan,* 511 U.S. at 834. Second, under the subjective component, the prison official must have acted with a sufficiently culpable state of mind, namely "deliberate indifference to inmate health or safety." *Id.* In this regard, deliberate indifference is established only when a prison official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate that harm. *Id.* at 837-38. For instance, the intentional denial or delay of access to medical care or intentional interference with treatment may constitute deliberate indifference. *Estelle v. Gamble,* 429 U.S. 97, 104-105 (1976). However, a mere difference of opinion over the adequacy of medical treatment provided cannot provide the basis for an Eighth Amendment claim. *El'Amin v. Pearce,* 750 F.2d 829 (10th Cir. 1984); *Jones v. McCracken,* 562 F.2d 22 (10th Cir. 1977); *Smart v. Villar,* 547 F.2d 112 (10th Cir. 1976). *See also Johnson v. Stephan,* 6 F.3d 691, 692 (10th Cir. 1993) (holding that any disagreement regarding a prisoner's diagnosis does not support a claim of cruel and unusual punishment). Moreover, the negligent diagnosis or treatment of a medical condition or the accidental or inadvertent failure to provide medical care does not establish a medical wrong under the Eighth Amendment. *Estelle,* 429 U.S. at 105-106. *See also Daniels v. Gilbreath,* 668 F.2d 477, 487 (10th Cir. 1982) (holding that mere exposure to "an unreasonable risk of harm or simple negligence" does not constitute deliberate indifference).

The constitution "does not mandate comfortable prisons." *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981). The conditions may be restrictive and even harsh. *Id.* at 347. To prove an unconstitutional deprivation, "a prisoner must show that conditions were more than uncomfortable, and indeed rose to the level of conditions posing a substantial risk of serious harm to inmate health or safety." *DeSpain v. Uphoff,* 264 F.3d 965, 973 (10th Cir. 2001) (internal quotation omitted). Whether there is a substantial risk of serious harm depends on "the particular facts of each situation; the circumstances, nature, and duration of the challenged conditions must be carefully considered." *Id.* at 974 (quotation marks and citations omitted). "[T]he length of exposure to the conditions is often of prime importance." *Id. See also Mitchell v. Maynard,* 80 F.3d 1433, 1443 (10th Cir. 1996). Furthermore, the measures employed to alleviate the condition must be taken into account. *See Hutto v. Finney,* 437 U.S. 678, 686–87 (1978) and *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001).

In this action, Plaintiff claims Dr. Marlar was deliberately indifferent to his chronic medical needs stemming from hemorrhoids and anemia. Yet, the record in this matter irrefutably indicates that Plaintiff received constant treatment for his hemorrhoids, and there is no indication that Dr. Marlar ever denied or disregarded a request for care. Specifically, Plaintiff received some form of medical treatment related to his hemorrhoids (examination, evaluation, blood work, etc.) on the following dates:

> October 23, 2012; February 2, 2013; November 15, 2013; November 18, 2013; March 2, 2015; March 12, 2015; April 7, 2015; April 24, 2015; April 27, 2015; May 19, 2015; June 8, 2015; December 30, 2015; December 31, 2015; January 15, 2016; January 16, 2016; January 21, 2016; January 26, 2016; February 3, 2016; March 2, 2016; March 9, 2016; March 24, 2016; April 13, 2016; April 26, 2016; June 14, 2016; June 30, 2016; July 14, 2016; July 28, 2016; August 12, 2016; September 30, 2016; November 9, 2016; November 30, 2016; December 1, 2016; and February 28, 2017.

*See generally* S.R., Attachment 6. *See also* Statement of Facts, *supra*, at ¶¶ 8-63.

Contrary to Plaintiff's claims of delayed or denied medical care, Dr. Marlar did arrange for Plaintiff's hemorrhoids to be treated and ultimately removed at the University of Oklahoma Medical Center (OUMC). Plaintiff was seen at OUMC on April 26, 2016; June 14, 2016; June 30, 2016; July 14, 2016; July 28, 2016; August 12, 2016; December 1, 2016; and February 28, 2017. S.R., Attachment 6, pages 156-158, 165-166, 170-171, 172-175, 183186, 200-207 and 214-222. Beyond Plaintiff's allegations, there is no evidence that Dr. Marlar delayed or interfered with OU's scheduling of Plaintiff's hemorrhoid surgery. Additionally, Plaintiff's prescription records indicate that, beginning in 2012, he began receiving rectal suppositories (anusol and qualitest), colace, iron pills, lactulose, metamucil and milk of magnesia for his hemorrhoids. S.R., Attachment 7. Thus, any claim that Dr. Marlar knew of and disregarded Plaintiff's serious medical condition is without merit.

In his Complaint, Plaintiff claims that Dr. Marlar's refusal to treat his bleeding hemorrhoids caused him to nearly die of anemia and ultimately resulted in his hospitalization at McAlester Regional Health Center (MRHC) in January of 2016. However, Dr. Youlette Louis of MRHC notably found that Plaintiff's hemorrhoids were "**[u]nlikely to be the source of his severe anemia/pancytopenia.**" S.R., Attachment 6, page 110 (emphasis added). In fact, Plaintiff reported a "history of anemia as a little boy… ." *Id.* at 107. Thus, Plaintiff's anemia does not appear to be tied to his hemorrhoids or Dr. Marlar's alleged lack of medical care. Therefore, Plaintiff has failed to establish any causal connection between Dr. Marlar and any constitutional violation. Specifically, in order to establish a claim for an Eighth Amendment violation, a causal, but-for relationship must be shown between defendant's conduct and plaintiff's constitutional deprivation. *Daniels v. Gilbreath*, 668 F.2d at 477; *Byers v. City of Albuquerque*, 150 F.3d 1271 (10th Cir. 1998). In fact, causation must be established before liability can attach. *Lee v. Town of*

*Estes Park*, 820 F.2d 1112, 1116 n.3 (10th Cir. 1987). Although there is a record that Plaintiff complained to Dr. Marlar of feeling anemic in March of 2015, he was given a blood test and extra food. *Id.* at pages 58-60. And in the weeks that followed his initial complaint of anemia, Plaintiff was examined and/or had his blood tested by DOC medical staff repeatedly prior to his hospitalization. *See* Statement of Facts, ¶¶ 15-32. While there does not appear to have been a specific finding of anemia prior to Plaintiff's hospitalization, even a negligent diagnosis, especially in the context of Plaintiff's well-documented and ongoing treatment, does not constitute an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976).

In sum, at no time was Plaintiff denied medical treatment for his hemorrhoids, nor is there any evidence that failure to treat Plaintiff's hemorrhoids caused his hospitalization for anemia. Plaintiff's differing opinion as to what his treatment should have been is insufficient to support his claim for an Eighth Amendment violation. *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). *See also Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993). Dr. Marlar is therefore granted summary judgment as to Plaintiff's deliberate indifference claim. *See Ledoux v. Davies,* 961 F.2d 1536, 1537 (10th Cir. 1992), which held that no claim of constitutional dimension is stated where a prisoner challenges only matters of medical judgment or otherwise expresses a mere difference of opinion concerning the appropriate course of treatment.

### DR. MARLAR IS ENTITLED TO QUALIFIED IMMUNITY.

Once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that (1) the defendant violated one of his constitutional rights, and (2) the right in question was clearly established at the time of the allegedly unlawful activity such that "every reasonable official would have understood that what he [was] doing" violated the law. *Morris v. Noe,* 672 F.3d 1185, 1191 (10th Cir. 2012).

This Court also finds that Dr. Marlar is entitled to qualified immunity. A public official or employee is entitled to qualified immunity unless "clearly established" federal rights of which a reasonable person would have known are shown to have been violated. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "Clearly established" is predicated on a finding that in light of pre-existing law the unlawfulness is apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity is an entitlement not to stand trial or face the burdens of litigation. It is an immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth,* 472 U.S. 511, 527 (1985). It is effectively lost if a case is erroneously permitted to proceed to trial. *Hannula v. City of Blakely,* 907 F.2d 129, 130 (10th Cir. 1990).

Whether qualified immunity exists is a question of law to be decided by the trial court. *England v. Hendricks,* 880 F.2d 281, 283 (10th Cir. 1989). "To determine whether a plaintiff can overcome the qualified immunity defense, 'first we determine whether the plaintiff has asserted a violation of a constitutional or statutory right, and then we decide whether that right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated that right.'" *Roska ex rel. Roska v. Peterson,* 328 F.3d 1230, 1239 (10th Cir. 2003) (quoting *Garramone v. Roma,* 94 F.3d 1446, 1449 (10th Cir. 1996)).

"[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir. 1992). *Accord, Roska,* 328 F.3d at 1248. The contours of the invoked right must be sufficiently clear such that objectively reasonable state officers would understand that what they are doing violates that right. *Roska,* 328 F.3d at 1247 (citing *Anderson v. Creighton,* 483 U.S. 635 (1987)). "[T]he touchstone of [this] inquiry is whether the officers [were] on notice

[that] their conduct [was] unlawful." *Id.* at 1248. (citations and quotations omitted). Thus, if the plaintiff has alleged a constitutional violation and has met his burden to establish that the law on the subject is clearly established, plaintiff must further show that a reasonable official would have known that his actions would violate clearly established law. In considering the "reasonable state actor," we must keep in mind that qualified immunity precludes the imposition of liability for 'all but the *plainly incompetent* or those who knowingly violate the law.' *Malley v. Briggs,* 475 U.S. 335, 341 (1986) (emphasis added). Where "officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Id. at 341. Id.* at 1251.

In this action, Plaintiff cannot meet his burden of establishing that Defendant violated his constitutional rights by failing to treat his anemia and hemorrhoids. In the alternative, Plaintiff cannot demonstrate that the law is so clearly established that the Dr. Marlar's well-documented treatment of his hemorrhoids was unconstitutional so that a reasonable person in the Defendant's position would have known that his conduct violated the Eighth Amendment. For the foregoing reasons, Defendant Dr. Marlar is entitled to qualified immunity.

Accordingly, Defendant's Motion for Summary Judgment is granted, and all remaining pending motions are denied as moot.

**IT IS SO ORDERED** this 19th day of April, 2019.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma